[Civ. No. 9051.   Third Dist.   Oct. 8, 1957.]

SASIA AND WALLACE, INC. (a Corporation), Appellant, v. SCARBOROUGH IMPLEMENT COMPANY (a Co-partnership sued as a Corporation), Respondent.

Kendall & Howell and John D. Jelletich for Appellant.

Winton & Edlefsen and Gordon H. Winton, Jr., for Respondent.

SCHOTTKY, J.—Sometime prior to August, 1953, at Merced, California, defendant, Scarborough Implement Company, a copartnership (sued herein as a corporation), sold, under a conditional sales contract, six tractors, equipped as complete unit cotton pickers, with gasoline carburetion equipment, to one William Goforth. These tractors, so equipped, were taken to Kern County by Goforth. Thereafter, in August, 1953, while the tractors were in Goforth's possession, plaintiff sold to Goforth, under a title retaining contract, six butane tanks with butane carburetion equipment, and removed the gasoline tanks and equipment from the tractors and installed the bu-

tane tanks and carburetion equipment on them. In July, 1954, defendant repossessed said tractors because of the failure of Goforth to make the payments under the contract. Plaintiff learned that the tractors had been repossessed, and about six weeks after such repossession, and after the tractors with the butane equipment thereon had been sold by defendant, telephoned to defendant at Merced demanding that defendant return to them the butane tanks and carburetion equipment that plaintiff had installed thereon. The defendant refused to return the butane equipment or pay plaintiff therefor, and plaintiff commenced an action in claim and delivery against defendant to recover said butane equipment or the value thereof. Defendant filed an answer denying plaintiff's right to recover, and alleging that plaintiff, without defendant's consent, removed the gasoline carburetion equipment from said tractors and replaced same with butane carburetion equipment and that thereupon said butane carburetion equipment became an integral part of said cotton picking machines so as to be incapable of severance without injury to the whole of said machines.

The trial court found the facts substantially as hereinbefore set forth, and found specifically:

"That on August 4, 1953 plaintiff removed said gasoline carburetion equipment and replaced it with butane equipment; that at that time defendant held legal title to said machines."

"That defendant was not notified of said action and had no knowledge of plaintiff's acts in replacing the gasoline carburetion equipment with butane carburetion equipment."

"That plaintiff knew that the machines were encumbered at that time but did not make sufficient inquiry to learn as to who actually held title to the machines."

"That the carburetion equipment of the machines formed an integral part thereof."

"That on or about the first day of July, 1954, defendant repossessed said equipment for failure of purchaser Goforth to live up to the terms and conditions of the conditional sales contract."

"That shortly thereafter defendant resold said machines; that plaintiff never offered at any time to replace the butane equipment with gasoline carburetion equipment but did forward the gasoline carburetion equipment to defendant on December 1, 1955 after trial of this case."

The court concluded that the defendant was the legal owner

of said equipment at the time plaintiff installed the butane equipment; that the carburetion equipment was an integral part of the cotton picking machines so as to be incapable of severance without injury to the whole of said machines; that plaintiff was negligent in ascertaining the true title to the machines, and that defendant was entitled to judgment. Plaintiff has appealed from the judgment.

Appellant's first contention is that an agreement for a conditional sale, reserving title in the vendor, is good against third parties as well as against parties to the transaction and that the butane tanks and carburetion equipment having been sold by it under a conditional sales contract, it was entitled to recover them from respondent. Appellant argues that respondent cannot justify the taking of appellant's said equipment by virtue of the doctrine of accession, which doctrine is set out in section 1025 of the Civil Code as follows:

"When things belonging to different owners have been united so as to form a single thing, and cannot be separated without injury, the whole belongs to the owner of the thing which forms the principal part; who must, however, reimburse the value of the residue to the other owner, or surrender the whole to him."

Appellant quotes from 68 American Law Reports, page 1243, as follows:

"The general rule with respect to accession to property which is the subject of a conditional sale or chattel mortgage may be stated to be that property incorporated with, or labor expended upon, property which is the object of a chattel mortgage or a conditional sale, will pass by accession with the principal article upon foreclosure of the mortgage, or upon the vendor reclaiming it under a conditional sale, where the articles attached become so closely incorporated with the principal article that they cannot be readily identified and detached without injury to the latter, but that when it is possible readily to identify and detach them without injury to the principal article they will not pass, by accession, to the chattel mortgagee or conditional vendor of the principal article."

Appellant cites the case of *A. Meister & Sons Co.* v. *Harrison,* 56 Cal.App. 679 [206 P. 106]. In that case there were also two conditional sellers involved. The defendant sold motor trucks to buyer and plaintiff sold or leased passenger bus bodies to be attached to the trucks. The defendant repossessed the trucks from the buyer and plaintiff gave notice

to the defendant that he wanted the passenger bus bodies. The defendant ignored plaintiff and sold the trucks with the passenger bus bodies. Plaintiff then filed suit and was awarded judgment for the reasonable value of the passenger bus bodies. In affirming the judgment the court said at page 682:

". . . The bodies were attached to the trucks in a manner which permitted an easy separation, without damage to the trucks. Plaintiff was entitled to the possession of its property upon Hark's default and the defendants were without right in their entire dealings with the plaintiff's property."

Respondent argues that appellant was not justified in removing from the machines the gasoline carburetion equipment and replacing it with butane carburetion equipment, and that to permit appellant to recover its carburetion equipment and leave the machines without any carburetion equipment would be neither equitable nor in accordance with the authorities. As pointed out by respondent, the Meister case is clearly distinguishable from the instant case. For it is to be noted that in the Meister case the bus bodies were added to the trucks and when they were removed from the trucks the trucks were the same as when they were purchased under contract from defendant. As stated by the court, the bus bodies could be removed without damage to the trucks.

However, in the instant case, appellant removed the gasoline carburetion equipment from the machines and installed the butane carburetion equipment in its place. The removal of the butane carburetion equipment from the machines would leave the machines without any carburetion equipment, and, as found by the trial court, "the carburetion equipment was an integral part of the cotton picking machines so as to be incapable of severance without injury to the whole of said machines." Respondent cites *Dersch* v. *Thomas*, 138 Cal. App.Supp. 785, in which the court said at page 789 [30 P.2d 630]:

"Alterations in or additions to articles of personal property belonging to another do not constitute transfers of title within the meaning of the section. If the addition is of such a nature that the thing added cannot be removed without injury, title passes by accession and not by transfer. (Civ. Code, § 1025.)"

The case of *D. Q. Service Corp.* v. *Securities Loan & Discount Co.*, 210 Cal. 327 [292 P. 497], is cited by appellant in his reply brief. Appellant states that in that case the conditional vendor of truck tires who added tires on a truck had

knowledge that the lessee of the truck did not have title to said truck and the court found that the conditional vendor of the truck tires was entitled to have his tires back. Appellant quotes from page 329 as follows:

". . . If the appellant had placed the tires on the truck in ignorance of the provisions of the auto-lease contract, there would be no doubt as to its immediate right to recover in this action."

However, in that case the court also said, at page 330:

". . . There is uncontroverted evidence to the effect that at the time the appellant attached its tires to the truck wheels the vehicle was in need of new tires, the old ones having 'worn out.' Therefore, the removal of the tires furnished by the appellant will leave the truck in substantially the same condition that it was prior to their attachment, and the respondent will not suffer any injury."

It is therefore apparent that the foregoing case is clearly distinguishable from the instant case for in the instant case respondent would suffer substantial injury by the removal of the butane carburetion equipment.

Appellant seeks to justify its removal of the gasoline carburetion equipment from the machines upon the ground that it was ignorant of the conditional sale by respondent of the machines in question. However, it should be noted that appellant's asserted lack of knowledge of the conditional sale of the machines is based upon only the testimony of one of the appellant's officers which the court was under no duty to believe and apparently did not believe, because it found: "That plaintiff knew that the machines were encumbered at that time [when installing the butane equipment] but did not make sufficient inquiry to learn as to who actually held title to the machines." This finding is supported by the record and we are satisfied that the court was justified in concluding, as it did conclude, that if appellant did not actually know of the conditional sale of the machines, appellant should have known and appellant was possessed of sufficient knowledge to put it on inquiry. Appellant's witness Wallace testified that he knew the machines were encumbered although he stated that he was informed that the San Joaquin Cotton Oil Company was financing Mr. Goforth. This should have put him upon inquiry to learn the truth.

Appellant's final contention is that if the doctrine of accession is applicable, the court erred in not awarding appellant the value of the butane carburetion equipment in accordance

with section 1025 of the Civil Code which provides that the owner of the principal part under the doctrine of accession "must, however, reimburse the value of the residue to the other owner, or surrender the whole to him."

We think that the most reasonable construction of the term "value of the residue" is that it is intended to mean the value that has been added to the principal part, in the instant case the whole machine, by the accession. The implied finding of the trial court is that the machines were not enhanced in value by the addition of the butane equipment, and the testimony of one of the respondents, Mr. Scarborough, that "I would rather have the gas. We don't use butane," is sufficient to support a finding that when appellant removed the gasoline carburetion equipment and substituted the butane equipment nothing of value was added to the machines. Testimony by the president of appellant corporation as to the value of the butane carburetion equipment merely created a conflict in the evidence. We are therefore unable to agree with appellant's contention that the court erred in not reimbursing appellant for the value of the butane carburetion equipment.

No other points require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.